IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 26, 2008

Charles R. Fulbruge III
Clerk

No. 07-51252

MARTA ZEPEDA, Individually, and as next friend for MAZ

Plaintiff-Appellant

v.

BOERNE INDEPENDENT SCHOOL DISTRICT; CRAIG RADTKE, Individually, and in his official capacity as Director of Legal Affairs for the Boerne Independent School District

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:07-CV-00607

Before SMITH, WIENER, and, HAYNES, Circuit Judges.

HAYNES, Circuit Judge:[*]

This appeal presents the unusual case where claims that were never ripe also have now become moot. Representatives of the Boerne Independent School District (District) provisionally declined to let Marta Zepeda pre-enroll her nephew for school in the District. One month before school started, however, the Superintendent agreed to admit Miguel, and he has attended school in the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

District ever since. Nevertheless, Marta, as Miguel's next friend, refused to drop this lawsuit which alleges that the District's "policy" of denying admission to students like Miguel violates state and federal law. The district court dismissed Marta's claims for lack of ripeness, reasoning that the Board of Trustees (Board)–the body with final discretion to admit students like Miguel–never rendered a decision on his enrollment. The district court thus concluded that the District never reached a final, adverse decision on which Marta could base a claim of actual or imminent injury. Agreeing that Marta's claims were unripe when filed, we affirm the judgment below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Miguel Zepeda was a five-year old child who resided in the District with his Aunt, Marta Zepeda, who was not his legal guardian or custodian. His birth mother lives outside the District.

Marta sought to pre-enroll Miguel in one of the District's kindergarten classes on April 10, 2007, approximately four-and-a-half months before the first day of school (August 27, 2007). The school registrar informed Marta that she could not enroll Miguel without proof that she had the legal right to act as his guardian or parent. Marta returned later that day with a notarized document from Miguel's mother, but the registrar told her this would not suffice.

Marta eventually sought counsel from the Rio Grande Legal Aid. Frank Alvillar, a Legal Aid attorney, then called Craig Radtke, the District's Director of Legal Affairs, to discuss Miguel's admission. Alvillar cited Radtke to section 25.001(d) of the Texas Education Code,[1] noted that an Eastern District of Texas

---

[1] In relevant part, the provision reads:
"For a person under the age of 18 years to establish a residence for the purpose of attending the public schools separate and apart from the person's parent, guardian, or other person having lawful control of the person under a court order, it must be established that the person's presence in the school district is not for the primary purpose of participation in extracurricular activities. The board of trustees shall determine whether an applicant for admission is a

2

case found a power of attorney sufficient to establish a child's residency under that provision, and informed Radtke that Miguel's mother was willing to provide a power of attorney. About a week later, Radtke sent Alvillar a nine-page response, arguing that § 25.001(d) does not create an independent basis for admission. He concluded the letter by telling Alvillar that he would need certain forms "[a]s we continue our discussion of this particular situation."

Approximately two weeks later, Radtke spoke with Aida Zaragoza of Legal Aid about Miguel's case. He proposed other statutory means by which Marta might be able to establish Miguel's residency, but Zaragoza found them untenable. Radtke ended the conversation by telling Zaragoza that he would consider the matter further. Radtke then sent an email to Dr. John Kelly, the District's superintendent, who was on vacation at the time, informing him of Miguel's situation.

On July 11, 2007, outside counsel for the District, Stephan Rogers, wrote a letter to Zaragoza reiterating Radtke's arguments against Miguel's admission. The letter also referred Zaragoza to the District's admissions policy. The policy incorporates Texas law by granting the Board the final discretion to admit students who reside in the District with someone other than a parent or legal guardian.[2] He ended the letter by stating:

> If you have any other information that you believe the District should take into account, or if you can offer a legal analysis that suggests that the District must admit Miguel despite the authorities referenced herein, we would be most happy to receive and consider it.

---

resident of the school district for purposes of attending the public schools and may adopt reasonable guidelines for making a determination as necessary to protect the best interests of students." TEX. EDUC. CODE § 25.001(d) (1995).

[2] This portion of the policy incorporates § 25.001(j) by providing: "The Board by policy may allow a person showing evidence of legal responsibility for a child other than an order of a court to substitute for a guardian or other person having lawful control of the child under court order."

On July 19, 2007, Marta filed the present lawsuit on behalf of Miguel, alleging that the District's "actions" and "policies" deprived Miguel of his right to equal protection and due process under the Fourteenth Amendment to the United States Constitution, as well as his rights under § 25.001. Specifically, Marta alleged that the Board's failure to admit Miguel "without a legal document showing that guardianship/adoption was legalized" constituted a violation of § 25.001. She also alleged that the District's policies and practices violated the Fourteenth Amendment by establishing a classification that deprives education to a discrete class of children who do not reside with their parents, legal guardians, or other persons having legal custody, and by creating an irrebutable presumption that Miguel could not qualify for admission.

The District's Policies at the Time of Suit

Marta frames her lawsuit as a challenge to the District's admissions policy at the time of suit. For the most part, the policy merely summarizes relevant portions of the Texas Education Code.[3] Notably, the policy incorporates §25.001(j), which grants the Board discretion to admit students who reside in the District with someone other than a parent or legal guardian. These policies were available on the District's website at the time of this dispute.

The District's official policies also contain a detailed grievance procedure for addressing admissions and other issues. These procedures encourage persons to informally resolve disputes with the District. If such efforts fail, however, the procedures instruct persons to file a formal complaint within fifteen days of the challenged decision or action. After filing a formal complaint, the person receives a "Response" from the lowest level administrator with authority

---

[3] In her response to the District's expedited motion to dismiss, Marta attached what she apparently believed to be the District's admissions policy. It appears, however, that the document is only a summary of the District's policy that parents are asked to review and sign when enrolling their children. Unlike the District's actual admissions policy, the summary document does not specifically reference the Board's discretion to admit students like Miguel (students who reside in the District but not with a parent or legal guardian).

to remedy the alleged problem. For admissions decisions, Radtke serves as the level-one decisionmaker. A person can appeal an adverse level-one "Response" to the District's Superintendent (level two), and ultimately to the Board. Marta admits that she never initiated this process prior to filing this lawsuit.

The District Admits Miguel

When Superintendent Kelly returned from vacation, he reviewed the facts and admissions policy pertinent to Miguel's case. He focused on the portion of the admissions policy that incorporates § 25.001(j),[4] and determined that it granted the District discretion to admit students like Miguel, i.e., students who do not reside with their parents, legal guardian, or other persons having legal custody, but nevertheless reside in the District. Given this discretion, Kelly decided Miguel should be admitted. On July 30, 2007, Kelly had counsel for the District send a letter to Marta informing her that the District would admit Miguel on the basis of his mother's power of attorney. The letter also asked Marta to drop her lawsuit. Marta refused, and, in response, the District filed an expedited motion to dismiss. In her response to that motion, filed after the district court's hearing, Marta argued that her suit remained viable because the District employed unlawful admissions policies on the day she filed suit. She also argued that the District's "clarified" policies continued to violate § 25.0001 because the District might exercise its "discretion" unfavorably in the future, either against Miguel or some other student. She continued to urge this position even after the District admitted in open court that it would not deny Miguel admission in the future, so long as he resided with Marta in the District.

---

[4] § 25.001(j) states in relevant part:
"For the purposes of this subchapter the board of trustees of a school district by policy may allow a person showing evidence of legal responsibility for a child other than an order of a court to substitute for a guardian or other person having lawful control of the child under an order of a court."

The District Court's Dismissal Order

The district court dismissed Marta's claims, with prejudice, for lack of ripeness. The court found that Miguel had not suffered an "actual or imminent" injury because the District never actually denied him admission. According to the court, Marta's claims could only mature for the purposes of justiciability following a final decision from the Board, rendered through the District's formal grievance process.

## II.  DISCUSSION

On appeal, Marta asserts that the district court erred by dismissing her claims on ripeness grounds. She appears to contend that we should construe the assertions of Radtke and Rogers that Texas law does not permit the custody of a child to be transferred via a power of attorney as an effective denial of Miguel's admission, giving rise to a ripe injury. Although the district court ultimately based its ripeness ruling on the absence of a final admissions decision by the Board, it also found that Radtke and Rogers never denied Miguel admission.

We review a dismissal for lack of subject matter jurisdiction de novo. PCI Transp. Inc. v. Fort Worth & W. R.R. Co., 418 F.3d 535, 540 (5th Cir. 2005). A district court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on the complaint alone, the complaint and undisputed facts, or the complaint, undisputed facts, and the court's resolution of disputed facts. Ynclan v. Dep't of the Air Force, 943 F.2d 1388, 1390 (5th Cir. 1991). Where, as here, the district court relies on the third of these grounds and makes jurisdictional findings of fact, we review those findings for clear error. Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

To establish the jurisdictional prerequisite of ripeness, Marta had to show (1) a concrete injury for the purposes of damages, or (2) an imminent threat of harm providing a right to injunctive relief. As explained below, neither of these grounds for ripeness existed when Marta filed suit over a month before the first

6

day of school. Indeed, this case illustrates precisely why courts refrain from deciding premature lawsuits. When Superintendent Kelly, the level-two decisionmaker, returned from vacation, he granted Marta the primary relief sought by this lawsuit, thereby mooting a purported controversy that was never ripe in the first instance. Had Marta filed a proper grievance, she would have forced Radtke, the level-one decisionmaker, to take a definitive position on Miguel's admission. If Radtke officially adopted the position which Marta alleges he took–that of denying Miguel's admission–Marta could have sought review of that interim decision from Superintendent Kelly. In the event that Kelly declined Miguel's admission, then Marta could have pursued the matter before the Board. If the Board admitted Miguel, no problem would have existed. If not, she would have had a ripe lawsuit.[5]

To determine whether claims are ripe, this Court evaluates (1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration. Texas v. United States, 497 F.3d 491, 498 (5th Cir. 2007), petition for cert. filed (Fed. 25, 2008) (No. 07-1109). These prongs must be balanced, Am. Forest & Paper Ass'n v. EPA, 137 F.3d 291, 296 (5th Cir. 1998), and "[a] case is generally ripe if any remaining questions are purely legal ones." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 833 F.2d 583, 587 (5th Cir. 1987). It is fundamental, however, that "even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." Ctr. & S. W. Servs. v. EPA, 220 F.3d 683, 690 (5th Cir. 2000). In this sense, the doctrines of ripeness and

---

[5] We do not see an inherent contradiction between our decision that only the Board's official denial of Miguel's admission could create a ripe injury and the proposition that Kelly's decision to admit Miguel mooted this purported controversy. Although only the Board may speak for the District, the District's grievance procedures would not permit Radtke to appeal Kelly's decision to the Board. Rather, those procedures operate only in favor of aggrieved parents and students. Nothing suggests that the Board may deny a particular student admission on its own accord, without the matter being raised before it by the aggrieved party.

standing[6] "often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." Texas, 497 F.3d at 496. If the purported injury is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. Thomas, 473 U.S. at 581.

In her complaint, Marta alleges that the District violated § 25.001 by refusing to admit Miguel in the absence of a "legal document showing that guardianship/adoption was legalized." She also alleges that the District's practice/policy of "denying admission to children who do not reside with their parents or legal guardians or other persons having legal custody" violates the Equal Protection Clause. Thus, under the aforementioned principles, Marta's claims could only be ripe if the District had denied Miguel admission prior to the filing of this lawsuit based on Marta's inability to provide a legal document showing formal transfer of custody. Conversely, if Miguel's potential admission to the District remained contingent on uncertain future events, then Marta had not yet suffered a concrete injury and her claims were unripe.

On this record, Marta cannot show that the District ever officially denied Miguel's admission. As an initial matter, the district court found that Radtke and Rogers never reached a final conclusion on Miguel's admission, and given the content of Radtke and Rogers's letters, we do not find that conclusion clearly erroneous. If Marta and her counsel thought otherwise, they could have invoked the District's grievance procedures which would have forced Radtke to make an official "yes" or "no" decision on Miguel's admission. It is undisputed that the District's grievance procedures were available online at the district's website.

---

[6] To establish standing, a plaintiff must have suffered an "injury in fact," which the Supreme Court has described as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 566 (1992) (internal citation and footnote omitted). It is clear that Marta individually has no contestable claim, ripe or unripe. Miguel is the only potentially harmed party in this lawsuit.

Moreover, these procedures should have come as no surprise to Marta's counsel as they merely give effect to both Texas law and this circuit's precedent that the Board speaks for the District concerning the admission of students. § 25.001(j); Jett v. Dallas ISD, 7 F.3d 1241 (5th Cir. 1993).

Even assuming that Radtke officially declined Miguel's admission, the District's policy gave the Board final discretion on whether to admit Miguel. As mentioned, this policy is Texas law. § 25.001(j). The District had a procedure in place where Marta could "go up the ladder" to obtain a decision of the Board. The first day of school was more than a month away when Marta filed suit, providing the District ample time to admit Miguel. Indeed, this is precisely what the District did. Requiring Marta to follow the chain until she either obtained relief or obtained an adverse decision from the Board is consistent with circuit precedent under which a school district can be held liable for 42 U.S.C. § 1983 violations only upon a policy or action of a person with final policymaking authority. Jett, 7 F.3d 1241.

It is undisputed that the Board never made an adverse admissions decision as to Miguel, and it never was asked to do so. Until the Board officially spoke, any decision that purportedly denied Miguel admission remained contingent because the Board could always exercise its discretion to overturn that decision and admit Miguel.[7] Thus, Marta could only sustain a concrete injury, or demonstrate that such an injury was imminent, after fully availing herself of the District's formal grievance procedures or otherwise obtaining a final determination from the District's decisionmaker–the Board. In sum, Marta's claims were not ripe when she sued because she never received an

---

[7] The grievance procedure is for aggrieved parties. It does not provide a way for the Board to appeal its own Superintendent's decision. Thus, once Kelly acted, that matter was at rest.

adverse decision from a person or entity with authority to definitely resolve Miguel's request for admission.

Marta protests that the district court's decision effectively requires her to exhaust administrative remedies in contravention of the established rule that a § 1983 claimant need not do so. See Porter v. Nussle, 534 U.S. 516, 523 (2002). But whether a school district has taken an adverse action against a prospective student in the first instance is a different question from whether the school district has a method to redress the harm done. Here, Marta was required to avail herself of the District's formal grievance procedures, not to exhaust administrative remedies, but to establish the concrete, non-contingent injury necessary to make her claims ripe. See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 191-92 (1985) (recognizing that the judicial doctrine of exhaustion of administrative remedies is conceptually distinct from the question of whether an "initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."); see also Alvin v. Suzuki, 227 F.3d 107, 116 (3d. Cir. 2000) ("exhaustion . . . is analytically distinct from the requirement that the harm alleged has occurred . . ."). Even in the absence of the District's formal grievance procedures or admissions policy, Marta could only sustain a concrete injury if the Board denied Miguel admission. The mere fact that the District has chosen to incorporate state and federal law into its administrative policies cannot insulate Marta from satisfying basic standing and ripeness requirements. Or, in other words, receiving a final adverse decision from the Board is not merely an "administrative remedy"–it is what Texas and federal law require to establish a concrete injury in this situation.

Marta further argues that we should excuse her from the ripeness requirement because the District violated her due process rights by failing to provide her with personalized notice of its grievance procedures. But even

assuming that such allegations could confer jurisdiction on a court where it would not otherwise exist–a dubious proposition at best–it is undisputed that the District's grievance procedures were publicly available on its website.

That is not to say, however, that we approve of the precise way in which Radtke and Rogers handled the situation. Upon being informed of Marta's attempts to enroll Miguel, Radtke could have diffused this dispute by simply informing Marta that, under Texas law and the District's policies, only the Board could make a final and binding decision on Miguel's admission and by bringing the grievance procedures to her attention.[8] But regardless of Radtke and Rogers's actions, once Miguel was admitted and the District provided assurances of his continued admission in open court,[9] Marta's counsel, Zaragoza, had an obligation to dismiss voluntarily this lawsuit. No basis exists for Marta's contentions that the District might revoke Miguel's admission at some later date, and she had no standing to sue on behalf of other students. Zaragoza's refusal to drop this lawsuit despite Miguel's admission, and her decision to pursue this meritless appeal served no conceivable interest of her client. Like all lawyers, Zaragoza has an ethical obligation to pursue only legitimate claims, see FED. R. CIV. P. 11, and can be sanctioned for filing frivolous appeals. See FED. R. APP. P. 38. Further, under 28 U.S.C. §1927, an attorney can be sanctioned when she "so multiplies the proceedings in any case unreasonably and vexatiously." After oral argument in this case, the District moved for sanctions

---

[8] We find troubling the District's assertions that it only discovered the fact that its admissions policy incorporates § 25.001(j) midway through this dispute.

[9] Courts generally treat voluntary cessation of purportedly unlawful conduct by government officials with greater solicitude than similar action by private parties. See McCrary v. Poythress, 638 F.2d 1308, 1310 & n.1 (5th Cir. 1981); Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988). Indeed, it has been suggested that "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." Ragsdale, 841 F.2d at 1365 (citing 13A Wright, Miller & Cooper Federal Practice and Procedure § 3533.7, at 353 (2d ed. 1984)).

against Marta's attorneys under Rule 38. Although we decline to impose sanctions at this time, we warn Zaragoza that she may not be given the benefit of the doubt in the future.

The district court's judgment is AFFIRMED. Because the district court based its order solely on lack of subject matter jurisdiction, however, its judgment is reformed to dismiss Marta's claims without prejudice. See Hitt v. Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (noting that a dismissal for lack of subject matter jurisdiction is not a determination of the merits). The District's motion for sanctions is DENIED, but attorney Zaragoza and Rio Grande Legal Aid are warned not to file or continue meritless litigation in the future.

Wiener, Circuit Judge, specially concurring:

Because I too would affirm dismissal, albeit on grounds of mootness rather than lack of ripeness, I concur in the judgment of panel majority. With due respect, however, I must disagree with the reasoning and analysis that leads the panel majority to affirm the district court's ripeness dismissal. First, the district court's decision that Miguel's denial of admission by lawyers for the District did not produce a ripe cause of action is a conclusion of law that we review de novo, not a factual one reviewed for clear error: There are no contested issues as to the discrete fact on which the district court's legal conclusion regarding ripeness was based, i.e., no disagreement about who said or wrote what to whom and when. The separate question whether, for ripeness purposes, those discrete facts constitute an actionable denial of admission by or on behalf of the District is undeniably a question of law which I would answer by holding that the lengthy, clear and unequivocal written denials of little Miguel's application for admission to public school, one denial written by inside counsel and the other written by

12

outside counsel for the District, were sufficiently firm and unconditional (never even bothering to mention to Zepeda or her counsel that those refusals were appealable to and reversible by the Board) to make Zepeda's cause of action ripe when it was filed, long before the Superintendent returned from vacation and reversed the lawyers' denial of admission. It was at that point that Zepeda's lawsuit became moot, making the district court's subsequent dismissal affirmable –– but only on grounds of mootness.